UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

---

**ILEANA ORTEGA LAZCANO,**
**IVAN HERRERA MARTINEZ, and**
**DIAYAN HERRERA ORTEGA**,

Petitioners,

**CASE No.:** 3:26-cv-02163

v.

**WARDEN,** ERO El Paso Camp East Montana;

**MARKWAYNE MULLIN**, Secretary of the Department of Homeland Security;

**TODD BLANCHE**, Attorney General of The United States;

**DAVID J. VENTURELLA**, Acting Director of U.S. Immigration and Customs Enforcement; and

**MARY DE ANDA-YBARRA**, El Paso Field Office Director, U.S. Immigration and Customs Enforcement.

Respondents.

---

**VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241, AND REQUEST FOR ORDER TO SHOW CAUSE**

Petitioners, **ILEANA ORTEGA LAZCANO, IVAN HERRERA MARTINEZ, DIAYAN HERRERA ORTEGA**, by and through undersigned counsel, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241 to remedy their unlawful detention in violation of the Constitution and laws of the United States.

## INTRODUCTION

Petitioners ILEANA ORTEGA LAZCANO, IVAN HERRERA MARTINEZ, and DIAYAN HERRERA ORTEGA, are a family unit consisting of a wife, husband, and their mutual adult child, who entered the United States together as a family unit and had a consolidated case before the immigration court, and a consolidated appeal pending before the Board of Immigration Appeals (BIA), who are currently detained by the United States government without any meaningful opportunity to seek release. Petitioners are Cuban citizens and nationals with no criminal history who have lived in the United States since their entry on April 2, 2022. After their entry, the Department of Homeland Security released Petitioners pursuant to Form I-220A, Order of Release on Recognizance, determining that they could safely reside in the community while their immigration proceedings remained pending. Petitioners complied with all conditions of release and regularly appeared for scheduled ICE check-ins.

On August 18, 2026, Petitioners appeared for a routine ICE check-in in El. Paso, Texas. Instead of completing the check-in, ICE officers arrested them and placed them in immigration detention. Petitioners were not detained because they violated any condition of release, committed a crime, or were found to pose a danger to the community or a flight risk, but solely because the government applies a categorical policy that denies individuals like them any opportunity to seek release before an immigration judge. All three Petitioners are believed to be detained at the El Paso Camp East Montana facility in El Paso, Texas and/or at an ICE detention/holding facility in El Paso, Texas or nearby. Petitioners are detained under a categorical "no-bond a" policy that Respondents apply pursuant to the Board of Immigration Appeals' September 5, 2025, decision in *Matter of Yajure Hurtado*.

This Petition challenges Petitioners' detention without any meaningful opportunity to challenge the necessity of their detention. Such detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution. Petitioners therefore seek a writ of habeas corpus ordering their immediate release, or, at minimum, a prompt individualized bond hearing before a neutral immigration judge at which the government bears the burden to justify continued detention.

## **JURISDICTION**

1. This action arises under the United States Constitution, the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.*

2. This Court has subject matter jurisdiction over this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (habeas corpus authority); Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal question); and the Fifth Amendment to the United States Constitution (Due Process Clause of the U.S. Constitution).

3. This Court has authority to grant relief under 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

4. Federal district courts have jurisdiction to hear habeas claims brought by noncitizens challenging the lawfulness and the constitutionality of their detention where such claims are independent of any final order of removal. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 291–95 (2018); *Buenrostro-Mendez v. Bondi,* No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J).

## VENUE

5. Venue is proper in the district of confinement. *Rumsfeld v. Padilla,* 542 U.S. 426, 442 (2004). Petitioners are currently in the custody of ICE at the ERO El Paso Camp East Montana located in El Paso, Texas, which is within the jurisdiction of this District. **See Composite Ex. 1, DHS/ICE Online Detainee Locator information.**

6. Venue is proper in this District under 28 U.S.C. § 1391(e), because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to his claims occurred in this district, and no real property is involved in this action.

## REQUIREMENTS OF 28 U.S.C. § 2243

7. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith," unless the Petitioners are not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

8. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

9. Petitioners **ILEANA ORTEGA LAZCANO, IVAN HERRERA MARTINEZ, DIAYAN HERRERA ORTEGA** are natives and citizens of Cuba and members of the same immediate family. Ileana Ortega Lazcano and Ivan Herrera Martinez are married, and Diayan Herrera Ortega is their adult son. Petitioners were detained during an ICE check-in in El Paso, Texas, on August 18, 2026. They remain in Respondents' physical and legal custody at the ERO El Paso Camp East Montana in El Paso, Texas.

10. Respondent **Warden** is sued in his/her official capacity as the Warden of the ERO El Paso Camp East Montana, where Petitioners are currently detained.

11. Respondent **Markwayne Mullin** is the Secretary of the United States Department of Homeland Security ("DHS"). In that capacity, he exercises ultimate control and supervisory authority over all components and personnel of DHS, including U.S. Immigration and Customs Enforcement ("ICE"). He is responsible for the administration and enforcement of the nation's immigration laws pursuant to 8 U.S.C. § 1103(a). Accordingly, he is the Petitioners' ultimate legal custodian, as Petitioners' detention is maintained under DHS authority.

12. Respondent **Todd Blanche** is the Attorney General of the United States. In that capacity, he administers the Department of Justice ("DOJ"), including the Executive Office for Immigration Review ("EOIR"), the Board of Immigration Appeals ("BIA"), and the Immigration Courts. He is responsible for the administration and enforcement of the nation's immigration laws pursuant to 8 U.S.C. § 1103(g). Accordingly, he is one of Petitioners' legal custodians.

13. Respondent **David J. Venturella** is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), a component agency within DHS. In that capacity, he exercises authority over ICE operations nationwide, including enforcement, detention, and removal

functions. Accordingly, he is one of Petitioners' legal custodians, as he has direct oversight of the agency responsible for Petitioners' custody.

14. Respondent **Mary De Anda-Ybarra** is the El Paso Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), which has jurisdiction over the ERO El Paso Camp East Montana in El Paso, Texas where Petitioners are detained. In that capacity, she exercises day-to-day supervisory authority over custody determinations and the conditions of detention within his jurisdiction. Accordingly, she is a proper Respondent as one of Petitioners' legal custodians.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

15. Petitioners ILEANA ORTEGA LAZCANO, IVAN HERRERA MARTINEZ, and DIAYAN HERRERA ORTEGA are natives and citizens of Cuba and members of the same immediate family. Ileana Ortega Lazcano and Ivan Herrera Martinez are married, and Diayan Herrera Ortega is their adult son.

16. On April 2, 2022, Petitioners entered the United States without inspection and were encountered by immigration officials. Petitioners have remained continuously present in the United States since that time. **See Composite Ex. 2, Notice to Appear.**

17. On August 9, 2022, the Department of Homeland Security ("DHS") issued separate Notices to Appear ("NTAs") to Petitioners Ivan Herrera Martinez and Diayan Herrera Ortega. **See Composite Ex. 2, Notice to Appear.** On August 12, 2022, DHS issued an NTA to Petitioner Ileana Ortega Lazcano. *Id.* Each Petitioner was charged with removability under INA § 212(a)(6)(A)(i) as a noncitizen present in the United States without having been admitted or paroled. *Id.*

18. On April 3, 2022, Petitioners Ivan Herrera Martinez and Diayan Herrera Ortega were released from immigration custody pursuant to separate Forms I-220A, Orders of Release on Recognizance ("ORECs"). **See Composite Ex. 3, Petitioners' Forms I-220A.** On April 4, 2022, Petitioner Ileana Ortega Lazcano was released from immigration custody pursuant to a Form I-220A, Order of Release on Recognizance. *Id.*

19. By releasing Petitioners on their own recognizance, DHS necessarily determined that Petitioners did not pose a danger to the community and were not a flight risk. **See 8 C.F.R. § 1236.1(c)(8).**

20. Petitioners have no criminal history in the United States or any other jurisdiction.

21. Petitioners are residents of Midland, Texas.

22. On August 12, 2022, DHS filed Petitioners' Notices to Appear with the Executive Office for Immigration Review ("EOIR"), thereby commencing removal proceedings. Petitioners' removal proceedings were consolidated, with Ileana Ortega Lazcano designated as the lead respondent and Ivan Herrera Martinez and Diayan Herrera Ortega listed as riders.

23. On March 22, 2023, Petitioners filed a timely Form I-589, Application for Asylum and for Withholding of Removal, with the El Paso Immigration Court.

24. On April 2, 2023, after accruing one year of physical presence in the United States, Petitioners became eligible to apply for adjustment of status to lawful permanent resident pursuant to the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, as amended (the "Cuban Adjustment Act" or "CAA").

25. On May 19, 2023, Petitioners filed their Form I-485, Application to Register permanent Residence or Adjust Status, pursuant to the CAA with the U.S. Citizenship and Immigration Services ("USCIS"). **See Composite Exh. 4, USCIS Form I-797C, Notice of Action, Form I-485, Cuban Adjustment Act, receipt notice.**

26. On September 23, 2024, the Immigration Judge denied Petitioners' application for asylum, withholding of removal under INA § 241(b)(3), and withholding of removal under the Convention Against Torture, and ordered Petitioners removed to Cuba. **See Exh. 5, Order of the Immigration Judge.**

27. On September 30, 2024, Petitioners filed a timely appeal with the Board of Immigration Appeals ("BIA") challenging the Immigration Judge's September 23, 2024, decision. **See Exh. 6, BIA Filing Receipt for Appeal or Motion.** The BIA appeal remains pending.

28. On August 18, 2026, during a routine ICE check-in in El Paso, Texas, Petitioners was taken into custody by officers of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations (ICE ERO), and placed in immigration detention.

29. Following Petitioners' release on OREC in April 2022, Petitioners complied with all conditions imposed by DHS. Petitioners regularly appeared for scheduled ICE check-ins and complied with all reporting requirements. Petitioners established a stable life in the community, reside at a known address, and remain available to immigration authorities at all times, while they await adjudication of their BIA appeal and pending USCIS CAA application.

30. Petitioners were taken into custody not because they violated any condition of release, failed to appear, engaged in criminal conduct, or experienced any change in circumstances. Rather, they were arrested while complying with DHS instructions to appear for a routine ICE check-in.

31. Petitioners were never advised that appearing for the scheduled ICE check-in could result in their detention. By arresting Petitioners under these circumstances, DHS effectively transformed Petitioners' compliance with its reporting requirements into the basis for their incarceration.

32. Following their arrest, Petitioners were, upon information and belief, transferred to the ERO El Paso Camp East Montana in El Paso, Texas, where they are currently believed to remain detained.

33. Petitioners' sudden detention has caused immediate and significant disruption to their lives and has separated them from their extended family, community, and established support networks. Their continued detention subjects Petitioners and their loved ones to mounting economic, emotional, and psychological hardship, despite Petitioners' prior compliance with their release conditions and ICE reporting requirements.

34. Petitioners have not been afforded any meaningful opportunity to request release from detention before a neutral decisionmaker. They have been denied an individualized custody determination despite possessing a fundamental liberty interest protected by statute and the Constitution.

35. On September 5, 2025, the Board of Immigration Appeals ("BIA") issued its precedential decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that noncitizens who entered the United States without inspection and are later taken into immigration custody are categorically ineligible for release on bond under INA § 236(a).

36. Prior to that decision, the BIA had long recognized that immigration judges possessed discretionary authority under INA § 236(a) to grant release on bond following an individualized custody hearing, absent a disqualifying criminal history or findings of flight risk or danger. *See Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA June 30, 2025).

37. Consistent with that understanding, for decades ICE likewise treated noncitizens apprehended from within the United States as detained pursuant to 8 U.S.C. § 1226(a), and therefore eligible for individualized bond determinations. *Rocha Rosado v. Figueroa,* No. CV 25-02157, 2025 WL 2337099 (D. Arizona Aug. 11, 2025).

38. That longstanding interpretation abruptly changed on July 8, 2025, when ICE adopted a new interpretation of the detention statutes through internal guidance reclassifying most noncitizens who entered without inspection as subject to mandatory detention under 8 U.S.C. § 1225 rather than discretionary detention under § 1226(a).[1]

39. As a direct result of *Matter of Yajure Hurtado* and Respondents' application of that decision, Petitioners are being detained under a categorical no-bond rule that treats them as ineligible for an individualized bond hearing.

40. Petitioners’ continued detention is not the result of any individualized determination that they pose a danger to the community or a flight risk. Instead, their detention results solely from Respondents’ application of a categorical no-bond rule that denies them any opportunity to seek release before an immigration judge.

[1] ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, 07/08/2025, AILA Doc. No. 25071607, Available at: https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed on February 6, 2026).

41. Although the Fifth Circuit has held that statutory challenges to this interpretation are foreclosed, *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), that decision expressly did not address whether such detention violates the Due Process Clause. Petitioners therefore raise a constitutional challenge to the lack of any individualized custody determination.

42. On February 18, 2026, the United States District Court for the Central District of California vacated *Matter of Yajure Hurtado* under the Administrative Procedure Act, concluding that the decision merely adopted the same detention policy previously set aside by the court. *Maldonado-Bautista v. Santacruz*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). The court held that the BIA's interpretation was "functionally equivalent" to the vacated DHS policy and therefore contrary to law.

43. This Petition for Habeas Corpus followed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

44. There is no statutory requirement that a noncitizen exhaust administrative remedies before challenging immigration detention through a petition for writ of habeas corpus. Congress imposed an exhaustion requirement only for judicial review of final orders of removal. *See* 8 U.S.C. § 1252(d)(1); *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007) ("Under the INA, exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal.").

45. The Supreme Court has further recognized that exhaustion is not required where a plaintiff "may suffer irreparable harm if unable to secure immediate judicial consideration of [the] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Continued civil detention without any opportunity to seek release before a neutral decisionmaker constitutes an ongoing and

irreparable deprivation of physical liberty.

46. Even where exhaustion is considered as a prudential matter, it is unnecessary when pursuit of administrative remedies would be futile or where the agency has predetermined the dispositive issue. *McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992) (holding that an administrative remedy is inadequate when it "lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute" or where the "challenge is to the adequacy of the agency procedure itself"). Moreover, the administrative immigration courts lack authority to adjudicate constitutional challenges to the legality of detention, making habeas corpus the only meaningful forum in which Petition may raise his due process claim.

47. In this case, exhaustion would be futile, because the Board of Immigration Appeals ("BIA") has issued a binding precedential decision in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025), holding that immigration judges lack authority to grant bond to noncitizens deemed subject to detention under 8 U.S.C. § 1225(b)(2)(A). As a result of that decision, immigration judges have indicated that they lack jurisdiction to conduct bond hearings for individuals in Petitioners' position. Because immigration judges and the BIA are bound by that precedential decision, no administrative process exists through which Petitioners could obtain the relief sought. Accordingly, requiring exhaustion would serve no purpose other than delaying judicial review of Petitioners' ongoing deprivation of liberty.

## LEGAL FRAMEWORK

### DUE PROCESS CLAUSE

48. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation modified). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Id.* at 690.

49. The Due Process Clause limits the government's authority to deprive a person of physical liberty and requires that the deprivation of Petitioners' liberty must be narrowly tailored to serve a compelling government interest. *See, Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest").

50. In the immigration context, the Supreme Court has recognized only two legitimate purposes for civil detention: preventing flight and mitigating the risks of danger to the community. *Zadvydas,* 533 U.S. at 690; *Demore*, 538 U.S. at 528. Civil immigration detention is therefore justified only by the government's regulatory interests in preventing flight and protecting the community. *Zadvydas,* 533 U.S. at 690.

51. Because immigration detention is civil rather than punitive, the government must justify confinement based on an individualized determination that detention serves the regulatory purposes of preventing flight or protecting the community. *Zadvydas*, 533 U.S. at 690–91. Detention that is not reasonably related to these purposes or that is imposed categorically without individualized consideration raises serious due process concerns.

52. The Constitution requires some meaningful process through which a detainee may challenge the government's continued deprivation of his liberty. Courts evaluating procedural due process challenges to immigration detention routinely apply the *Mathews v. Eldridge* framework to determine whether additional procedural safeguards are required to protect a detainee's liberty interest. See, e.g., *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (recognizing that detainees may raise constitutional challenges to prolonged immigration detention).

53. Procedural due process requires, at minimum, "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In determining what process is due, courts consider: (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of that interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that additional procedures would entail. *Id.* at 335.

54. Respondents may contend that Petitioners' detention is authorized by statute because the Fifth Circuit recently concluded that certain noncitizens who entered the United States without inspection may be detained under 8 U.S.C. § 1225. See, *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). But *Buenrostro-Mendez* addressed only a question of statutory interpretation and expressly did not resolve whether such detention comports with the Due Process Clause. The constitutional question presented here is therefore distinct. Even

where Congress has authorized detention by statute, the government must still comply with the Fifth Amendment when depriving a person of physical liberty. See *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioners do not assert a statutory entitlement to bond. Rather, they challenge the government's continued detention of them without any meaningful opportunity to seek release before a neutral decisionmaker.

55. Even where the government asserts statutory authority for detention, the Due Process Clause independently limits the circumstances under which the government may deprive a person of physical liberty. See *Zadvydas*, 533 U.S. at 690 (explaining that immigration detention must remain consistent with constitutional limitations).

56. Although the Immigration Judge has ordered Petitioners removed, that order is not administratively final because Petitioners have filed a timely appeal with the Board of Immigration Appeals. See 8 C.F.R. § 1241.1(a) (a removal order becomes final only upon dismissal of an appeal by the BIA). Accordingly, Petitioners remain in pre-final-order detention, and the post-removal-order detention provisions of 8 U.S.C. § 1231 do not apply. Respondents therefore cannot rely on § 1231 to justify Petitioners' continued detention.

## DETENTION PROVISIONS UNDER THE IMMIGRATION AND NATIONALITY ACT

57. The Immigration and Nationality Act ("INA"), codified at Title 8 of the United States Code, Section 1101 *et seq.*, governs the authority of the United States Government to detain noncitizens during removal proceedings.

58. The INA authorizes the detention of noncitizens under four distinct statutory provisions:

1) **Discretionary Detention. Section 236(a) of the INA, 8 U.S.C. § 1226(a)**, generally governs the detention of noncitizens placed in regular, non-expedited removal proceedings and permits the release of noncitizens not subject to mandatory detention on bond or on their own recognizance.

2) **Mandatory Detention of Certain Criminal Noncitizens. Section 236(c) of the INA, 8 U.S.C. § 1226(c)**, generally requires the mandatory detention of noncitizens who are removable on the basis of specified criminal or terrorist-related grounds after their release from criminal custody.

3) **Mandatory Detention of "Applicants for Admission". Section 235(b) of the INA, 8 U.S.C. § 1225(b)**, generally mandates the detention of certain noncitizen applicants for admission, including noncitizens arriving at a port of entry and those who have not been admitted or paroled into the U.S. and are apprehended shortly after entering the country.

4) **Post-Removal-Order Detention. Section 241(a) of the INA, 8 U.S.C. § 1231(a)**, generally requires the detention of noncitizens subject to a final removal order during the 90-day removal period and authorizes continued detention of certain noncitizens beyond that period. *See* 8 U.S.C. § 1231(a)(2),(6).

59. This case concerns the detention provisions at 8 U.S.C. §§ 1225(b) and 1226(a). Both provisions were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009, 546, 3009-582 to 3009-583, 3009-585.[2]

[2] Section 1226(a) was most recently amended in 2025 by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).

## CLAIMS FOR RELIEF

## CLAIM ONE

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION (UNCONSTITUTIONAL DETENTION)

60. Petitioners reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein.

61. The Fifth Amendment's Due Process Clause protects all persons within the United States from arbitrary deprivation of liberty, regardless of their immigration status. *Zadvydas*, 533 U.S. at 693; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Freedom from physical restraint "lies at the heart of the liberty that the Due Process Clause protects." *Zadvydas*, 533 U.S. at 690.

62. There is no dispute that Respondents have deprived Petitioners of their liberty. Petitioners are detained without any meaningful opportunity to seek release or obtain an individualized determination of whether their detention is justified.

### A. Constitutional Limits on Civil Immigration Detention

63. Civil immigration detention is constitutional only when it bears a reasonable relationship to a legitimate governmental purpose. *Zadvydas*, 533 U.S. at 690–91; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Brown v. Taylor*, 911 F.3d 235, 241 (5th Cir. 2018). In the immigration context, the Supreme Court has recognized only two legitimate purposes for civil detention: preventing flight and protecting the community from danger. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 528 (2003).

64. Petitioners' continued detention bears no reasonable relationship to either purpose. Petitioners are categorically denied any bond hearing solely based on *Matter of Yajure Hurtado*, not because of any individualized finding that they pose a flight risk or danger to the community.

Detention imposed by categorical rule rather than individualized justification is arbitrary and violates due process.

65. Respondents have made no showing—nor could they—that Petitioners cannot be safely released subject to reasonable conditions. Where detention is not justified by flight risk or dangerousness, continued confinement is unconstitutional. *Zadvydas*, 533 U.S. at 690.

**B. Procedural Due Process**

66. Procedural due process requires, at minimum, "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Whether the procedures provided satisfy due process is determined by balancing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's interest. *Id.* at 335. Applying these factors here demonstrates that due process requires an individualized custody determination.

67. The private interest at issue, the right to be free from physical detention, strongly favors Petitioners. *Zadvydas*, 533 U.S. at 690. ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects.")

68. The risk of erroneous deprivation is extreme where, as here, Petitioners are categorically denied any opportunity to demonstrate they are neither a flight risk nor a danger to the community.

69. Petitioners were previously released by DHS after an individualized determination that they could safely reside in the community, yet they now remain incarcerated without any opportunity to challenge the necessity of that detention.

70. The government's interest does not justify the complete denial of an individualized custody determination. Providing an individualized custody determination imposes minimal administrative burden and directly serves the government's legitimate interests in ensuring appearance and public safety. By contrast, categorical detention without a hearing wastes governmental resources and forces unnecessary judicial intervention through habeas proceedings.

**C. Application of *Matter of Yajure Hurtado***

71. By categorically denying Petitioners the opportunity to request a bond hearing pursuant to *Matter of Yajure Hurtado*, Respondents have eliminated the individualized process required by the Due Process Clause. Detention imposed without any opportunity to be heard, and without any individualized justification, is unconstitutional as applied to Petitioners.

72. Petitioners' continued detention therefore violates both substantive and procedural due process under the Fifth Amendment.

73. Petitioners are entitled to immediate relief in the form of an order requiring Respondents to immediately release Petitioners from custody, or in the alternative, to provide a prompt bond hearing before a neutral immigration judge.

74. To satisfy due process, any bond hearing ordered by this Court must place the burden on the government to justify continued detention. *Loa Caballero v. Baltazar,* No. 1:25-cv-03120-NYW, 2025 WL 2977650, at *5-6 (D. Colo. Oct. 22, 2025); *L.G. v. Choate,* 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024); *Diaz-Ceja v. McAleenan,* No. 19-cv-00824-NYW, 2019 WL 2774211, at 12 (D. Colo. July 2, 2019). Where the government seeks to deprive an individual of physical liberty through civil detention, due process requires the government to demonstrate that detention is necessary to serve a legitimate purpose. See *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Allocating the burden to the

government is essential to reduce the risk of erroneous deprivation of liberty and to ensure that detention is not imposed arbitrarily.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners, ILEANA ORTEGA LAZCANO, IVAN HERRERA MARTINEZ, and DIAYAN HERRERA ORTEGA, respectfully requests that this Honorable Court grant the following relief.

A. Exercise jurisdiction over this action pursuant to 28 U.S.C. § 2241;

B. Issue an Order to Show Cause pursuant to 28 U.S.C. § 2243, directing Respondents to show cause, within a time set by the Court, why this Petition should not be granted;

C. Enjoin Respondents from removing Petitioners from the United States or transferring them outside this District while this action is pending;

D. Declare that Respondents' continued detention of Petitioners violates the Due Process Clause of the Fifth Amendment;

E. Issue a Writ of Habeas Corpus ordering Respondents to promptly and immediately release Petitioners from ICE custody or, in the alternative, order Respondents to provide Petitioners with a prompt individualized bond hearing before a neutral immigration judge within a time certain set by this Court;

F. Order that, at any bond hearing conducted pursuant to this Court's Order, the government bears the burden of proving that continued detention is justified by flight risk or danger to the community;

G. Order Respondents, upon Petitioners' release from custody, to promptly return all personal property and identity documents seized in connection with their detention to the extent such items are in Respondents' possession, custody, or control, including but not limited to their driver's licenses, employment authorization documents, and any other government-issued identification;

H. Enjoin Respondents from re-detaining Petitioners based on the same facts or circumstances underlying their present detention unless and until Respondents obtain further authorization from this Court upon a showing of materially changed circumstances establishing a lawful, individualized basis for detention, after providing Petitioners with reasonable written notice and a meaningful opportunity to respond;

I. Award Petitioners reasonable attorneys' fees and costs to the extent permitted by law, including under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; and

J. Grant such other and further relief as the Court deems just and proper.

Dated: August 19, 2026

Respectfully submitted,

/s/ Veronica Semino
Veronica Semino, Esq.†
FL Bar No.: 70592
SEMINO LAW, P.A.
P.O. Box 944
Fulshear, TX 77441
Tel.: (786) 505-6186
Facsimile: (855) 510-6764
veronica@seminolaw.com

Attorneys for Petitioners
†Admitted in Florida only; working remotely from Texas.

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I submit this verification on Petitioners' behalf pursuant to 28 U.S.C. § 2242. I declare under penalty of perjury that the factual statements made in the foregoing Verified Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge, information, and belief.

Dated: August 19, 2026

Respectfully submitted,

/s/ Veronica Semino
Veronica Semino, Esq.†
FL Bar No.: 70592
SEMINO LAW, P.A.
P.O. Box 944
Fulshear, TX 77441
Tel.: (786) 505-6186
Facsimile: (855) 510-6764
veronica@seminolaw.com

Attorneys for Petitioners
†Admitted in Florida only; working remotely from Texas.